FRANCES K. RESAG, Plaintiff-Appellant, *v.* WASHINGTON NATIONAL INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-328

Opinion filed November 24, 1980.

John Benedek and Norman Crawford, both of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Pretzel, Stouffer, Nolan & Rooney, Chartered, both of Chicago (D. Kendall Griffith, Daniel L. Boho, Robert Marc Chemers, and Joseph B. Lederleitner, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Frances K. Resag (plaintiff), appeals from an order dismissing her second amended complaint for personal injuries filed against Washington National Insurance Company, Stephen H. Sanders Real Estate Inc., Stephen H. Sanders and State National Bank (defendants).

In this court, plaintiff contends the trial court erred in dismissing her complaint for failure to state a cause of action. "Since we are here determining the propriety of the dismissal of the amended complaint, we must accept all properly pleaded facts as true and are concerned only with the question of law presented by the pleadings." *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538; see also *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284, 402 N.E.2d 599.

In her complaint, plaintiff alleged defendant Washington National Insurance Company was the owner of an office building and plaza in Evanston. Defendants Sanders and Sanders Real Estate Inc. operated and maintained said building and plaza. Defendant State National Bank was the first floor tenant of the building. It was necessary to walk on the plaza to enter and leave the bank.

On January 26, 1977, plaintiff transacted business at the bank as an invitee. When she exited the bank onto the plaza, wind currents of high velocity lifted her and blew her approximately 10 feet so that she fell and sustained injury. Defendants knew or should have known the high velocity winds were caused by defects in the design and configuration of the building which interfered "with otherwise natural wind currents." Defendants were negligent by building, operating or maintaining the building and plaza so that the natural condition of the land was altered,

thus intensifying wind currents; allowing the plaza to remain open to the public despite knowledge of the high velocity winds which resulted from the design of the building; and failing to place devices on the plaza which could be held by pedestrians to prevent them from being blown away by the wind.

Our supreme court has stated (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 113, 395 N.E.2d 549), "A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover."

In *Fancil*, which also concerned dismissal of a personal injury action, the supreme court stated (60 Ill. 2d 552, 554-55):

> "This action is brought on a theory of common law negligence. The complaint alleges the violation of no duty established by statute or ordinance. Necessary to recovery is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26.) It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 97.) The question of duty, the legal obligation imposed upon one for the benefit of another, is a question of law to be determined by the court (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26; Prosser, Handbook of the Law of Torts sec. 37, at 206 (4th ed. 1971)) because liability for common law negligence is not absolute but rather it is based on fault."

■■ The decision of whether to impose a duty, the dispositive issue here, turns on many factors, including foreseeability of the occurrence, public policy and social requirements. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 545, 301 N.E.2d 307.) With respect to foreseeability, in *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375-76, 308 N.E.2d 617, the court stated:

> "[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable * * * ; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. * * * . Prosser (Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146) comments: 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight."

With regard to public policy and social requirements, the supreme court has noted that in addition to foreseeability, " '[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the burden upon the defendant, must also be taken into account.' " *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99, 306 N.E.2d 39, quoting from *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231.

■■ After reviewing the facts alleged in the complaint, we do not find defendants could or should have reasonably foreseen, at the time of their allegedly negligent conduct, that an invitee pedestrian would be lifted and blown away by high velocity winds in the plaza caused by the design and configuration of the building. (See *Cunis*, 56 Ill. 2d 372, 377-78.) "While in retrospect it can be asserted that [defendant] should have foreseen that the unfortunate event in this case might conceivably occur, we do not believe its occurrence was objectively reasonable to expect." *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13, 310 N.E.2d 1; *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466, 343 N.E.2d 465.

Since the harm was not reasonably foreseeable, no legal duty arose. However, even if the harm was foreseeable, other factors would compel us to find there was no legal duty. The likelihood that a person would be lifted, blown to the ground and injured by the wind is minimal. The burden sought to be imposed on defendants is a heavy one because a building; or any other object of significant size which extends above ground level, may well alter natural wind currents. The economic costs to defendants to try to minimize the effect of the building on prevailing winds would be enormous. To impose a duty on an owner or occupier of land to construct, maintain and operate a building so that wind flow is altered to a lesser degree or to impose a duty on him to close the entrances to his establishment or to provide numerous handrails on his premises to protect all invitee pedestrians would be manifestly unfair. This is particularly true in view of the remote possibility of the occurrence such actions might or might not prevent. See *Lance*, 36 Ill. 2d 516, 518.

Plaintiff cites *Ettl v. Land & Loan Co.* (1939), 122 N.J.L. 401, 5 A.2d 689, in support of her contention that she stated a cause of action in her complaint. The New Jersey Supreme Court held a plaintiff did state a cause of action by alleging the defendant spread sand in piles on his own property and the sand was blown by the wind into plaintiff's adjacent land causing damage to plaintiff's property. The court held (122 N.J.L. 401, 404, 5 A.2d 689, 691):

> "[T]he law applicable in this type of a case is that the owner of a piece of land in its natural condition is, as a general rule, not accountable for physical results due to extraordinary or even ordinary forces of nature so long as he has not interfered with the

natural condition; but when he undertakes to make artificial changes in the land as, for example, by the storing or depositing of movable material on his land which afterward is carried by the ordinary force of nature, the owner becomes liable for his negligence if any."

Even if we consider the erection of a building as an artificial change in the land which interferes with the natural condition, the instant case is distinguishable from *Ettl*. There was a duty imposed on defendant in *Ettl* since in that situation, the occurrence was reasonably foreseeable. We would naturally expect wind to blow loose sand over a distance and quite possibly onto an adjacent property. Furthermore, since it was the sand which caused the injury to plaintiff's property, the purported negligent act was the spreading of the sand by the defendant. There would be no great burden imposed on defendant to guard against this occurrence. In that instant case, however, as shown above, the "altered" wind currents were the cause of the injury. This condition was an unforeseeable occurrence and created a situation in which public policy and social requirements dictate we must not impose a duty upon defendants.

For the above reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.