(No. 90-CC-0593—)

DEMETRIUS BLANKENSHIP, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 27, 1995.*

ROTMAN, MEDANSKY & ELOVITZ (ROBERT D. ROTMAN, of counsel), for Claimant.

JIM RYAN, Attorney General (CORINTH BISHOP II, Assistant Attorney General, of counsel), for Respondent.

OPINION

SOMMER, C.J.

Claimant seeks recovery for injuries sustained as an inmate in a slip and fall which occurred when he was entering a shower at the Sheridan Correctional Center on April 3, 1989. Claimant was confined to a segregation unit for disciplinary reasons at that time and was therefore subject to heightened security measures which essentially required him to be constantly handcuffed behind the back anytime he was not confined to a cell. Even the shower stall on the unit was specially constructed as a type of cell. The correctional officer accompanying Claimant from his cell to the shower explained the procedure utilized for escorting a handcuffed prisoner into the shower area:

"Q: Okay. In April of '89, what was the procedure once you had left the cell area and you were reaching the shower area?

A: Once I reach the shower area, I look in the shower and make sure there is nothing out of the ordinary, more or less make a sweep of the area. They have vents—we have problems. We have a vent that sometimes they want to take the vents out, the louvers, and they can make homemade shanks out of it, just make a quick search of the area and then I proceed to let them in.

Q: What do you do after you open the door and let the inmate in?

A: I open the door, I have the inmate step in and then I secure the door and I have the inmate step back to the door. He sticks his hands through the—we have a little door that he sticks his hands out and we release the handcuffs and then he goes on and he can take his ten-minute shower."

Claimant slipped and fell at the point that the officer was closing the shower cell door. Claimant contends that he slipped on "a small piece of soap," but the officer testified that his inspection of the shower area both before and after Claimant's fall did not reveal the presence of any pieces of soap or other hazardous residue from prior showers. Claimant admitted that he did not look at the floor of the shower prior to his fall, and there is no testimony or other evidence corroborating Claimant's statements about the "small piece of soap."

Claimant's counsel argues that it is negligence *per se* to keep an inmate handcuffed as he is entering a shower stall:

"We believe that the State's failure through the Sheridan Correctional Officer to remove the behind-the-back handcuffs or any handcuffs for that matter from an inmate before walking into a shower that is wet and soapy is negligent * * *.

* * *

[I]t's reasonably foreseeable that incidents could easily occur and people could easily fall in a wet shower when they are handcuffed and they have no balance and no way to catch their fall."

This Court has considered numerous penitentiary shower slip and fall cases in the past and has been reluctant to find them compensable absent significant aggravating circumstances:

"This Court has held repeatedly that the State of Illinois owes a duty to inmates of penal institutions to provide reasonably safe conditions. *Reddock v. State* (1978), 32 Ill. Ct. Cl. 611. Surfaces such as terrazzo in shower rooms, dormitories, public buildings, *etc.*, are necessary so that the premises can be cleaned and made sanitary. The smooth finish of these surfaces allows for cleaning, but also makes the materials slippery at times. Persons ° ° ° using such surfaces know the nature of them and must conduct themselves accordingly. Therefore, falls on such surfaces are often not compensable, absent aggravating circumstances.

° ° °

[U]sers are [expected] to conduct themselves with awareness of conditions where terrazzo or other smooth surfaced floors are encountered." *Conners v. State* (1988), 40 Ill. Ct. Cl. 112, 116-117.

Examples of aggravating circumstances which have rendered prison shower-related slip and falls compensable in the past are: an unprotected ventilation fan which precipitated finger lacerations;[1] mandatory usage of the shower area as a corridor or passageway;[2] and chronic flooding beyond the confines of the shower area.[3] However, even in those situations where the aggravating circumstances were present, substantial comparative fault was attributed to the inmates in each instance for having lost their balance on a known slippery surface. A prisoner's failure, as here, to look at the shower floor before stepping in has caused this Court to take an especially dim view of this type of claim. (*Wilcoxen v. State* (1994), 46 Ill. Ct. Cl. 280, 283.) Accordingly, absent sufficient aggravating circumstances, recovery cannot be had where the wet condition of the shower floor was, or should have been, readily apparent to the inmate. *Rodriguez v. State* (1994), 46 Ill. Ct. Cl. 290, 292.

Here, Claimant's counsel candidly acknowledges the dubious state of the evidence concerning the alleged "small piece of soap," and counsel has instead chosen to frame the issue by focusing on the presence of the handcuffs. In other words, did the fact that Claimant was

[1] *Thomas v. State* (1987), 40 Ill. Ct. Cl. 188.
[2] *Coley v. State* (1991), 44 Ill. Ct. Cl. 153.
[3] *Karry v. State* (1992), 45 Ill. Ct. Cl. 328.

handcuffed either cause or contribute to his fall, thereby creating an aggravating circumstance? We do not find the handcuffs to be the proximate cause of this Claimant's fall. Claimant's feet and legs were not shackled or restrained in any manner, and there is nothing in the evidence to indicate that the presence of the handcuffs played a role in his loss of footing. Rather, it appears that Claimant was simply not paying attention to the floor, misstepped, and lost his balance. Claimant was fully aware of the wet condition of the shower and had a duty to proceed with due care. As Claimant's contributory negligence was more than 50% responsible for this slip and fall, he is barred from a recovery by the provisions of section 2—1116 of the Code of Civil Procedure. (735 ILCS 5/2—1116.) It is therefore ordered that this claim is denied.

Aside from the merits of this matter, there is a pending motion for sanctions stemming from a failed deposition of Respondent's correctional officer. The deposition had initially been noticed to take place on April 15, 1991, at a court reporter's office in Joliet, but it was rescheduled several times without claimant's counsel issuing a new notice. Confusion eventually resulted on July 10, 1991, when Respondent's counsel inadvertently produced the deponent at the wrong location, leading to yet one additional rescheduling of the deposition. Had an amended deposition notice been issued by Claimant's counsel for the July 10, 1991, setting, a sanctionable situation would probably exist. However, without such a notice, it is understandable that problems could arise. Certainly there is nothing in the record to indicate that Respondent intentionally produced the deponent at the wrong location. Accordingly, the motion for sanctions is denied.